UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARLENE SHILLING, as Administrator Ad Prosequendum for the Estate of Donald Shilling, : : : | |
| Plaintiff, : : | **Hon. Joseph H. Rodriguez** |
| v. : : | Civil Action No. 13-2359 |
| REASSURE AMERICA LIFE INSURANCE COMPANY, : : : | |
| : | **OPINION** |
| Defendants. : : | |

This matter is before the Court on Cross Motions for Summary Judgment, filed by Defendant Reassure America Insurance Life Company[1] and Plaintiff Arlene Shilling, As Administrator Ad Prosequendum for the Estate of Donald Shilling.  The Court has considered the written submissions of the parties and the oral arguments advanced at the hearing on February 17, 2015.  For the reasons stated on the record that day, and those set forth here, Defendant's motion for summary judgment will be granted and Plaintiff's motion for summary judgment will be denied.

### I.      Background

On July 12, 1988, Donald Shilling was issued a Flexible Life Insurance With Premium Adjusted Provision Life Insurance Policy[2] by Defendants. McKinlay Cert., Ex. 4-5, 6 at ¶.  The policy carried a $37,000.00 Death Benefit. Id.  According to Defendant,

---

[1] Defendant is actually Jackson National Life Insurance Company and was improperly plead as Reassure America Life Insurance Company.  Reassure is Jackson's predecessor.

[2] Under a flexible premium universal life insurance policy, the policy holder determines the initial payment and the amount and frequency of the planned periodic premium payments.  These planned periodic premium payments offset the monthly cost of administering the policy.  The policy holder can change the scheduled payments and/or make additional payments at any time other that the planned time. Id. Exs. 5, 6, 7.  Donald Shilling elected to pay $250.00 annually. See Exs. 4-5, McKinlay Cert.

Donald Shilling failed to pay certain planned periodic premiums required to cover the monthly costs of the insurance and the load/expense deductions. Id. at Exs. 5, 6, and 7. As a result, on January 12, 2012, the policy lacked sufficient Cash Surrender Value to cover the monthly costs of the insurance and the load/expense deductions causing the policy to enter into the "Grace Period."[3] The Grace Period permits Shilling to make a premium payment large enough to cover the costs within 61 days. Id. at Exs. 5, 6 at ¶ 23. Defendant claims that it sent a letter explaining the Grace Period to Shilling on February 7, 2012. Id. Ex. 6, Ex. 7, 81:7-22; 84:9-23. Here, the Grace Period expired on March 14, 2012 and Defendant's letter directed Shilling to pay a premium of $744.06 by that date or risk termination of the policy. Id. at Ex. 6, 11.

Shilling failed to make a payment and the policy terminated. Defendant claims it mailed Shilling a Notice of Policy Termination on March 14, 2012 and advised him that the Grace Period expired and that the policy had insufficient funds to cover the costs of the insurance and the load/expense deductions. Id. Ex. 12. Donald Shilling passed away on November 16, 2012, nearly eight months after the policy expired. Id. Exs. 6, 12. His estate claims that it was never notified by Defendant that the policy had entered into the Grace Period or that the policy terminated. In addition, Plaintiff disputes that the policy properly entered the Grace Period because Defendants cannot validate its accounting of the policy cash surrender value prior to 2001. Both parties move for summary judgment.

---

[3] Under this policy, Shilling had the right to determine the amount and frequency of the planned periodic premium payments and could skip payments as long as there was sufficient equity in the policy to cover the monthly costs. In essence, the policy cannibalized its cash surrender value in the event that a planned premium payment was missed. Once funds were no longer available to cover the planned premium, the policy went into the Grace Period, during which the insured was notified to make a payment or risk termination of the policy. Id. at Exs. 5, 6, and 7 at 64:20-65:2.

## II. SUMMARY JUDGMENT STANDARD

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

In cases such as this, where cross-motions for summary judgment are pending, "[t]he Court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus Federal Practice and Procedure § 2720 (3d ed.); Marciniak v. Prudential Financial Ins. Co. of Am., 184 Fed. Appx. 266, 270 (3d Cir. 2006) (citing same). Accordingly, the Court will first consider Plaintiff's motion for summary judgment and determine whether Plaintiff has met his burden of demonstrating no genuine issue of material fact and that he is entitled to judgment as a matter of law. See Pearson, 247 F.3d at 482 n. 1 (internal citation omitted).

Here, Plaintiff's cross-motion is nothing more than a notice. There is no brief submitted in support of the motion. In addition, the motion was filed nineteen (19) days after the deadline for submission of dispositive motions set by the Magistrate Judge. See Dkt. No. 16. To succeed on her cross motion for summary judgment, Plaintiff must demonstrate the absence of a genuine issue of material fact or that she is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 323. The Court finds that Plaintiff has not properly asserted this motion before the Court and the Court is therefore unable to grant the motion. For these reasons, it is dismissed.

4

### III. <u>Analysis</u>

Summary judgment is granted in favor of Defendant because the policy was not in force at the time of Donald Shilling's death. As a result, Defendant did not breach its obligations under the contract. In addition, even if the policy was in force, summary judgment is granted as to Plaintiff's claims for breach of the covenant of good faith and fair dealing and for punitive damages.

A. <u>Breach of Contract Claims</u>

Counts I, II, and III of Plaintiff's Complaint appear to plead claims for breach of contract. Under New Jersey law[4], to establish a breach of contract claim against Defendants, Plaintiff must prove that (1) the parties entered into a contract containing certain terms; (2) the plaintiff did what the contract required the plaintiff to do; (3) the defendant did not do what the contract required the defendant to do; and (4) the defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff. <u>Video Pipeline, Inc. v. Buena Vista Home Entertainment</u>, Inc., 275 F.Supp.2d 543, 566 (D.N.J. 2003).

Here, there is no dispute that the parties entered into a contract in the form of the Policy. At issue is whether the policy was in force at the time of Donald Shilling's death. After a review of the record, there is no genuine issue of material fact related to whether the policy was in force. Plaintiff's arguments to the contrary lack evidential support.

Plaintiff's chief argument centers on her mischaracterization of the testimony of Donald Sanders, Defendant's Vice President of Operations, with respect to the Cash Surrender Value[5] of

---

[4] During oral argument, counsel for Plaintiff raised, for the first time, an allegation that this matter may be governed by Pennsylvania law. Plaintiff is a New Jersey resident and citizen, but the contract was allegedly signed in Pennsylvania. Plaintiff also briefs the issues under New Jersey law and initially filed her claim in the New Jersey Superior Court System. To the extent Plaintiff now questions the law governing her claims, the Court is unable to conduct a choice of law analysis on this record. However, the law in Pennsylvania is similar and the outcome would not change under Pennsylvania law. The Court will therefore analyze the claims under New Jersey law, recognizing the similar outcome construction under Pennsylvania law yields.

[5] Cash Surrender Value is "(a) the Gross Cash Value on the date of surrender, less (b) the Surrender Charge determined from the Table of Surrender Charges in this policy less (c) any Debt owed on this

the policy and whether it was sufficient to prevent the policy from entering into the Grace Period. Specifically, Plaintiff argues that there is a genuine issue of material fact related to whether the policy properly entered the Grace Period in January 2012 because Mr. Sanders is unable to account for the cash surrender value of the policy prior to 2001. Plaintiff does not point to any evidential proof that the calculation as of 2001 is incorrect, yet seeks an inference that a miscalculation is possible. An inference based upon speculation or conjecture does not create a material fact. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n. 12 (3d Cir. 1990).[6]

Donald Sanders testified that there were no paper copies of the calculations of the cash surrender value of the policy prior to 2001. Sanders Dep., Ex. 7 at 48:6-7. The value on August 12, 2001 was $5719.38 and that calculation was made within the computer system of the Defendant. Id. at 48:2-3. Although the physical calculations did not exist on paper, Mr. Sanders testified that it was possible to calculate the cash surrender value between 1988 and 2001 and that calculation is precisely what the computer system provided. Mr. Sanders explained that "You take all gross premium,

---

policy." Policy, Exs. 5, 6. The Gross Cash Value is defined in Section 3 of the policy as the account's value, reflecting accumulation of interests and payments after fees. Id.

[6] In Robin Construction Co. v. United States, 345 F.2d 610, 614 (3d Cir. 1965), the Third Circuit affirmed that speculation and possibilities are insufficient to defeat summary judgment:

> It is not enough to rest upon the uncertainty which broods over all human affairs or to pose philosophic doubts regarding the conclusiveness of evidentiary facts. In the world of speculation such doubts have an honored place, but in the daily affairs of mankind and the intensely practical business of litigation they are put aside as conjectural. In the words of Judge Learned Hand in DeLuca v. Atlantic Refining Co., 176 F.2d 421, 423 (2d Cir. 1949), cert. denied, 338 U.S. 943 (70 S.Ct. 423, 94 L.Ed. 581) (1950), ... "(b)ut if a motion for summary judgment is to have any office whatever, it is to put an end to such frivolous possibilities when they are the only answer."

Robin Construction Co. v. United States, 345 F.2d 610, 614 (3d Cir. 1965).

you deduct all expenses and charges and load, you deduct all cost of insurance, and you add any interest that's been credited" to arrive at the cash surrender value. Id. at 19-22.

Although counsel attempted to discredit Mr. Sanders in deposition, there is no testimony that suggests that the calculation on August 12, 2001 was erroneous.[7] The calculation was made several years before the threat of litigation ever materialized. Moreover, Plaintiff offers no independent calculation based upon known premiums paid by Donald Shilling or any evidence indicating that Donald Shilling ever challenged the calculations he received in his annual policy statements at any time during the policy's life. As a result, there is no genuine issue of fact related to the appropriateness of the policy being placed in the Grace Period.

Plaintiff's second argument addresses whether Donald Shilling received notice that the policy was entering the Grace Period and/or the notice of termination. In support, Plaintiff offers the affidavit of Arlene Shilling, in which she states that neither notice was received by Donald Shilling. Cert. Arlene Shilling, ¶2(c), (d), (e). Plaintiff's argument fails because the policy only requires that the notices be "mailed to [the policyholders] last known address no later than 30 days prior to termination." See Exs. 5, 6. Thus, whether or not Donald Shilling received the notices is immaterial; the issue is whether the notices were timely mailed.

---

[7] Computer generated reports are reliable in many contexts. See, Palisades Collection, LLC v. Kuchinsky, L-3805-12, 2014 WL 7883575, *5 (N.J. App. Div. Feb. 18, 2015) ("Defendant notes that . . . plaintiff . . . could not [] identify which person prepared the computer-generated Report. However, as the Law Division found, defendant does not point to anything in the record either by way of deposition or interrogatories to suggest that the plaintiff's computer generated report was fraudulent or calculated to interfere with the judicial system.") (internal quotation omitted); see also, Ramirez v. New Jersey, 81 F.Supp.2d 532, 538 (D.N.J. 2000) (holding reliance on computer record of warrant provides reasonable basis for detention).

Plaintiff's argument that N.J. Admin. Code 11:1–20.2 governs the mailing requirements misses the mark and Plaintiff offers no indication that Pennsylvania law yields a different result. New Jersey's Department of Banking and Insurance regulations provide that "[n]o nonrenewal or cancellation shall be valid unless notice thereof is sent … [b]y first class mail, if at the time of mailing the insurer has obtained from the Post Office Department a date stamped proof of mailing showing the name and address of the insured, and the insurer has retained a duplicate copy of the mailed notice." N.J. Admin. Code 11:1–20.2(i) (2).  In addition, Plaintiff's reliance on N.J. Admin. Code 11:1-20.2(e), which requires prior to cancellation both mailing and delivery to the insured applies only to commercial and homeowners' policies. The policy here does not fall within that regulation.  As a result, the policy language governs the notice and the determinative factor here is the mailing of the notice, not its receipt. Needham v. N.J. Ins. Underwriting Ass'n, 230 N.J.Super. 358, 553 A.2d 821 (N.J.Super.Ct.App.Div. 1989).

Here, the record reflects that Donald Shilling was sent a notice on July 14, 2011 advising him that if he continued to make only the planned premium payments, his policy would have insufficient cash surrender value on December 12, 2011 to keep the policy in force. See Ex. 7, Sanders Aff.; see also, Letter dated July 14, 2011, Ex. 9.  On December 21, 2011, Shilling tendered payment of $125.00 representative of his bi-annual premium payment. Id., Ex. 10.  Then, the Grace Period notice was automatically generated in the computer system. A copy of that notice remains in the system.  Sanders Dep., Ex. 7, 90:24-91:1.  Mr. Sanders testified as to Defendant's standard processes following generation of the Grace Period notice.  The notices are printed upon

8

generation, picked up by a mail carrier twice a day, sent to a pre-sort facility, and then delivered to the United States Post Office. Id. at 33:15-21. According to Mr. Sanders, once the notice is generated, it is mailed to the policyholder the following day. Id. at 81:7-22, 84:9-23, 102:15-25. The Grace Period notice here was generated on February 6, 2012 and mailed on February 7, 2012. Id. 81:7-22; 84:9-23; see also, Exs. 5, 11 and 18 at ¶¶9, 13. Plaintiff offers no evidence to rebut this fact, apart from speculation as to the possibility of error.[8]

Likewise, the Notice of Termination follows the same mailing protocol, and the record reflects that the termination notice was generated on March 14, 2012. Sanders' Suppl. Aff., ¶14; Exs. 12, 19. The termination notice was mailed on March 12, 2012. Id. Plaintiff offers no evidence to suggest that the notices failed to generate and/or be mailed pursuant to Defendant's standard operating procedures as described by Donald Sanders. Rather, Plaintiff attempt to misconstrue Mr. Sanders' testimony in an effort to create a material fact. Such attempts are insufficient to withstand summary judgment. Robertson, 914 F.2d at 382 n. 12.

The undisputed evidence in the record demonstrates that the policy was not in force at the time of Donald Shilling's death. As a result, summary judgment is granted in favor of Defendant.

### B. Breach of the Covenant of Good Faith and Fair Dealing

Summary judgment is granted in favor of Defendant as to Count IV. Because the policy was not in force at the time of Donald Shilling's death, there can be no breach of

---

[8] There is no dispute as to whether the address listed for Donald Shilling on the notices was correct. The notice was not returned to the Defendant by the United States Post Office as undeliverable. Ex. 18, ¶ 15.

the covenant of good faith and fair dealing.  Even if the policy was in force, summary judgment is still warranted because there is no evidence in the record to suggest that Defendant acted negligently or in bad faith. See Badiali v. New Jersey Mfrs. Ins. Group, --A.3d—at *5, 2015 WL 668206 (N.J. Feb. 18, 2015 ) ("A finding of bad faith against an insurer in denying an insurance claim cannot be established through simple negligence.") (citing Pickett v. Lloyd's & Peerless Ins. Agency, Inc., 131 N.J. 457, 481, 621 A.2d 445 (1993)).

"[E]very contract imposes on each party the duty of good faith and fair dealing in its performance and its enforcement." Pickett, 131 N.J. 457. This implicit duty requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 690 A.2d 575, 587 (N.J. 1997) (internal citations and quotations omitted). Even where the express terms of the contract are not violated, a defendant who acts with improper purpose or ill motive can be found liable for breaching the implied covenant if the breach interferes with the plaintiff's reasonable expectations under the agreement. See Intarome Fragrance & Flavor Corp. v. Zarkades, No. 07–873, 2008 WL 5109501, at *6 (D.N.J. Dec.2, 2008) (citing DiCarlo v. St. Mary Hosp., 530 F.3d 255, 267 (3d Cir. 2008)).

A defendant who acts in good faith on an honest, but mistaken, belief that her actions were justified has not breached the covenant of good faith and fair dealing. Model Jury Charge (Civil) 4.10J "Implied Terms—Covenant of Good Faith and Fair Dealing" (September 2009).  Although Plaintiff complains that there is potential for

error, she has not identified any evidence of ill motive or bad faith.  For these reasons, summary judgment is granted in favor of Defendant as to Count IV.

      C.  Punitive Damages

Summary judgment is granted in favor of Defendant as to Plaintiff's claim for punitive damages.  Because the policy was not in force at the time of Donald Shilling's death, there can be no claim for punitive damages.  Moreover, even if the policy was in force, summary judgment is still warranted because, while punitive damages are available in breach of contract in truly egregious circumstances, such circumstances are absent at bar. See Pickett, 131 N.J. 457.  Plaintiff has not identified any evidence in the record to support a claim for punitive damages.  As a result, Summary judgment is granted in favor of Defendant.

      IV.   Conclusion

For the reasons stated herein, Summary Judgment is granted on all counts in favor of Defendant.  Plaintiff's cross motion is dismissed and no issues remain.  An appropriate Order shall issue.

Dated: February 25, 2015

                                        s/ Joseph H. Rodriguez
                                        Hon. Joseph H. Rodriguez,
                                        UNITED STATES DISTRICT JUDGE